Burket, J.
The attorney general in his brief states the question thus: “Upon this record thus presented, the single question arises: Has the legislature of Ohio authorized the creation of boards of revision to revise the work of the decennial county and city boards of equalization, or either of such boards? On the part of the relator, wre contend no such authority is granted, while the defendants contend that the decennial board of equalization for county and city are by the statute constituted boards of revision.”
To determine this question it is necessary to consider and construe the statutes bearing on this subject.
So much of sections 281.3a and 2814a, passed April 16, 1900, 94 O. L., 247, as apply to this question, are as follows:
“Sec. 2813a. The decennial county board of equalization shall complete its work of equalization, on or before the fourth Monday of February, and the decennial board for cities of the first and second class, on or before the second Monday of April, of the year next following the beginning of the equalization, respectively, and, on its completion, each of said boards shall adjourn as a board of equalization, and the auditor shall immediately thereafter, give ten days’ public notice by advertisement in one or more newspapers, that the equalization has been completed, and that complaints against any valuation may be filed with the auditor of the county on or before the fifteenth day of April next following and will be heard by the board of revision, stating in the notice the time *502 and place of the meeting of said board, except that in cities of the'first and second class, snch complaints shall be filed on or before the fifteenth day of May next following.”
“Sec. 2814a. The decennial board of equalization shall sit as a board of revision, when notified by the auditor of the county to meet for that purpose, in which event it shall begin its session as a board of revision, on the first Monday of May following the completion of the decennial equalization, and shall close its session on or before the fourth Monday of September next following; except that the. decennial city board shall begin its session on the- first Monday of June, and shall close its session on or before the fourth Monday of January of the year next following. After the completion of the equalization by either board, complaints against any valuation may be filed with the auditor of the county, and, if any such complaint shall have been so filed on or before April 15th thereafter against any valuation of a decennial county board; or, or on or before May 15th thereafter against any valuation of a decennial city board, or, if the auditor of the county deem it advisable, he shall, in writing, notify the members of the proper' board of equalization to meet and sit as a board of revision on the day fixed by this act and at the place fixed for the meeting of the said boards respectively, and he shall give ten days’ public notice, by advertisement, in one or more newspapers, of the time and place of the meeting of the board of revision and the purpose thereof. The board of revision shall investigate all snch complaints and all complaints against any valuation filed with it as a board, or made by the county auditor, and may increase or decrease any valuation complained of and no others. Said *503 board shall, in all respects, be governed by the laws in force governing the valuing of real property, and shall make no change in any valuation complained ■of except in accordance with such laws, and subject to the laws regulating and restricting the limit of equalization, but no valuation, as fixed by the board of equalization, shall be increased by the board of revision, in any case, except upon reasonable notice as prescribed by this chapter, to all persons directly interested and an opportunity for a full hearing. The auditor of the county shall correct the tax duplicate according to the deductions and additions ordered by the board of revision, in the manner provided by law for making corrections thereof.”
These two sections are known as the Hendley law.
Sections 2813, 2815 and 2818, passed April 16,1900, 91 O. L., 336, are as follows:
“Sec. 2813. The auditor, surveyor and commissioners of such county shall compose the county board of equalization of the real property within the county, except that within any city of the first or second class; and they shall convene at the office of the county auditor on the third Monday of July, one thousand nine hundred, and every tenth year thereafter; and shall close their session on or before the first Monday in October then next following; and each shall be sworn, faithfully and impartially, to equalize the value of real estate within the county that is within their jurisdiction, according to law; any three of them shall form a quorum, and the auditor shall keep a full and accurate record of the proceedings and orders of the board.”
“Sec. 2815. In each city of the first and second class there shall be a decennial board for the equali *504 zation of the value of the real property within such city, to be composed of the county auditor, and six citizens of such city, appointed by the council thereof, except that in cities of the first grade of the first class, said six members shall be appointed by the city comptroller of such city, and shall consist of three members of each of the two leading political parties. Said board shall convene at the office of the county auditor, on the first Monday of August, in the year one thousand nine hundred, and every tenth year thereafter, and shall close its session on or before the third Monday in October then next following; and they shall severally take the same oath as that prescribed for the decennial county board; and a record of the proceedings and orders of said decennial city board of' equalization shall 'be kept by the auditor.”
“Sec. 2818. The state board of equalization shall consist of as many members as compose the state senate, chosen at the last previous election of the members of the general assembly and representing the same districts, all of whom shall have the qualifications of electors, and the qualified electors of each senatorial district shall, a,t the November election in the year one thousand nine hundred, and each tenth year thereafter, elect persons to serve as members of such board of equalization in accordance with the provisions of this chapter, and the returns of the poll books and certificate of election shall be governed by the law regulating the election of senators; and in case of vacancy in such office, either by death or resignation, or otherwise, the governor of the state shall have the power to appoint a person who shall be a resident elector of the district so vacated, to fill such vacancy as soon as he shall be informed thereof; the auditor of state shall, by virtue of his office, be a mem *505 ber of this board. The said board shall meet at Columbus on the first Tuesday of December, one thousand nine hundred, and every tenth year thereafter, and shall close its session on or before the first Monday in May then next following; and the members thereof shall each take an oath that he will, to the best of his knowledge and ability, so far as the duty devolves on him, equalize the valuation of real property among the several counties and towns in the state, according to the rules prescribed by this table for valuing and equalizing the value of real property transmitted to him by the several county auditors. Said board shall proceed to equalize the same among the-several towns and counties in the state, in the manner hereinafter prescribed.”
These three sections are known as the Royer law.
The Hendley law and the Royer law were both passed and signed by the presiding officers of the senate and house on the same day,but the Royer law was signed after the Hendley law had been signed, and this court held in the case of State ex rel. Guilbert, Auditor, v. Halliday, Auditor, 63 Ohio St., 165, that in so far as these two statutes are irreconcilable, the Royer law must prevail, and must to that extent be held as a repeal by implication of the Hendley law. With that holding we are fully content.
The relator claims and urges that the Royer law, in legal effect, irreconcilably conflicts with that part of the Hendley law which provides that the board of equalization, after having closed its session, shall again convene the following June as a board of revision.
As to the dates upon which the boards of equalization are required to meet, and finally close their sessions, the . two acts are in direct and irreconcilable *506 conflict, and as to those dates the Royer law must prevail, as heretofore held by this court; but there is no other or further conflict apparent, and none has been shown by argument, or even by inference. Nothing is said or provided as to boards of revision in the Royer law. That subject is provided for only in the Hendley law. Section 2813 of the Royer law provides for the county boards of equalization, and that they shall close their sessions by the first Monday of October, and section 2815 of the same law provides for the decennial city boards of equalization, and that their sessions shall be closed by the third Monday of October. Then section 281-1, Revised Statutes, as amended April 10, 1900, 91 O. L., 246, provides that these boards shall equalize the valuations of real property “so that each tract or lot shall be entered oh the tax list at its true value.” By section 2817, Revised Statutes, the county auditor is required to make out and transmit to the auditor of state, by the first Monday of November, 1900, an abstract of the real property in his county. The abstract here referred to is an abstract of the real property on the tax list after the equalization has been completed by the county or city board. The auditor of state is also a member of the decennial state board of equalization, and through him the abstract of all the real property of the state, after equalization by the county and city boards, is placed before the decennial state board of equalization, and that board proceeds to “equalize the valuation of real property among the several counties and towns in the state.” The county and city boards equalize the valuations of separate and individual properties, by raising the values of some, and reducing the values of others, so as to do justice as provided by the rules laid down in said section 2814, but the *507 aggregate value of the property must not be below the aggregate returned by the assessors,with the additions made by the auditor.
The state board of equalization does not revise or change the equalization so made of the separate and individual pieces of property by the county and city boards, but acts upon the totals or aggregates of the counties and towns as returned in the abstracts of the county auditors. In short, the aggregate valuations of the several counties and towns of the state are to be equalized as to each other by the state board, and not the several tracts of land or lots as to each other in such counties and towns. After the equalization is so made by the state board and its session closed on or before the first Monday of May, 1901, section 2819 requires the auditor of state to transmit to each county auditor a statement of the per centum to be added to or deducted from, the valuation of the real property of his county, and then the county auditor is required by the same section to add to, or deduct from, each lot or tract of real property, the required per centum on the valuation thereof as it stands after being equalized by the county and city boards of equalization.
In these several steps of valuation and equalization, the Royer law is given full force and control, and the Hendley law has no part and does not come in conflict with the Royer law, except as to dates of closing sessions, and as to such dates the Royer law prevails. This work of valuation and equalization must all be done and completed by the first Monday in May, 1901, and before the work of the board of revision can begin, as the sessions of that board begin as to county boards of revision on the first Monday in May, 1901, and as to city boards on the first Monday *508 of June of the same year. While the dates of closing the sessions of the boards of equalization under the two laws conflict, there is no conflict between them as to dates of convening or closing the sessions of the boards of revision, because the boards of revision under the Hendley law do not convene until all the boards under the Royer law have adjourned, except that the county board of revision convenes on the same day that the last board under the Royer law adjourns, that is, the first Monday in May, 1901. Neither does the work of the board of revision conflict with the work or duties of any board under the Royer law, because the board of revision takes the valuations and equalizations as made under the boards of the Royer law after they are completed, and proceeds to act upon complaints against the valuations, as equalized by the county and city boards of equalization. The board of revision cannot disturb the per centum of increase or decrease as to counties and towns made-by the state board.
The valuations made by the district assessors, and the equalization made by the county and city boards, of equalization, are made without notice to the owners of real estate, because the fourth subdivision of section 2814, which required such notice before raising the valuation of any lot or tract of land, was repealed by the amendment of that section, April 16,. 1900. *
Conceding for the purposes of this case, that the-general assembly has power to pass a law authorizing; an increase of the valuation of real estate as returned, by the district assessors, for the purposes of taxation,, without any notice to the owner, yet good government-would seem to require that the owner should have-notice, either statutory or otherwise, and an opportu *509 nity to be heard at some stage of the proceedings, before such increase of valuation should be finally fixed, and such has heretofore been the latv and practice in this state; and as neither the Royer law7 nor the Hendley law7 makes any provision for such notice w7hile the matter is pending before the board of equalization, it follow's that there can be no such notice or opportunity to be heard, unless had while the matter is pending before the board of revision, because that board alone is authorized to give such notice and grant such hearing, and if that board should be ousted, then the values as fixed by the boards of equalization, w'ithout notice to the owners, before said boards adjourned in October last, have become unalterable, no matter w7hat the inequality in valuation, or the just cause of complaint.
The Royer law7 is silent as to notice to owners of an intention on the part of the board of equalization, to raise the valuation of any particular lot or tract of land, and therefore it cannot be in conflict on the subject of notice, with the Hendley law7, which fully and carefully provides for such notice by the board of revision. The Hendley law7 provides that after the boards of equalization have adjourned, as such boards, the auditors shall immediately thereafter give ten days’ public notice by advertisement in one or more newspapers that the equalization has been completed, and that complaints against any valuation may be filed w7ith the auditor of the county, on or before the 15th day of April next following, and will be heard by the board of revision, stating in the notice the time and place of the meeting of said board, except that in cities of the first and second class such complaints shall be filed on or before the 15th day of May next following.
*510 The work of the board of equalization being thus completed, and public notice thereof having been given, each owner of real property has opportunity to examine the valuations and equalization thus made, not only of his own property, but also the property of others in his township or city, and compare the valuations as finally fixed by the board of equalization, and if not content therewith he may file a complaint with the county auditor by the 15th day of April or May, as the case may be, and have that complaint heard and passed upon by the board of revision, if a county board between the dates of the first Monday of May and the fourth Monday of September,. 1901, and if a city board, between the first Monday of June, 1901, and the fourth Monday of January, 1902, unless the boards should sooner adjourn. When the board of revision has heard and passed upon all complaints, either by individuals or .the county auditor, and closed its session, it is made the duty of the county auditor to correct the tax duplicate according-to the deductions and additions ordered by the board of revision, in the manner provided by law for making-corrections thereof. The tax duplicate here referred to, is the duplicate as made up after the completion, of the work of the state board of equalization.
Section 2814a makes it the duty of the board of revision, to investigate all complaints filed with the auditor, or with the board, or made by the auditor himself, and authorizes the board to increase or decrease-any valuation so complained of, and no others. It is urged by the relator that to allow the board of revision to thus increase, or decrease the valuations, would destroy the work of the county and city boards, of equalization, and of the state board, and that the work to be performed by such boards of revision is in *511 irreconcilable conflict with the work of the state board as fixed by the Royer law, and therefore inoperative. But, as already shown, the state board equalizes only the valuation among the several counties and towns of the state, and does not equalize as between the property of individuals. The state board equalizes the valuation among the counties and towns by means of a per centum, to be added to, or deducted from, the valuations of real property in the several counties and towns, as shown by section 2819, Revised Statutes. After this per centum has been added to, or deducted from, the valuation as fixed by the county or city boards of equalization, the board of revision hears complaints and adds to, or deducts from, the valuations as left after the auditor has added or deducted the per centums of the State Board from the valuations as fixed by the board of equalization. It is therefore clear that the state board and the board of revision, do not act on the same subject matter, and not at the same time, and therefore there is no conflict between them, or the work to be performed by them.
Neither is there any force in the claim of the relator, that the board of revision if allowed to make additions to, or deductions from, valuations, will destroy the work of the board of equalization. No valuation can be increased by the board of revision without reasonable notice to all persons directly interested, and an opportunity for a full hearing. Sections 2814a and 2804, Revised Statutes, 94 O. I,., 247 and 319. Said section 2814a provides in addition to the notice required, that the board of revision shall in all respects, be governed by the laws in force governing the valuing of real property, and shall make no change in any valuation complained of, except in accordance with *512 such laws, and subject to the laws regulating and restricting the limit of equalization. So that whatever changes in valuations the board of revision desires •to make, it must make in accordance with the laws governing the valuation of real property, and subject to the laws regulating and restricting the limit of valuation. Therefore the board of revision will be lim: ited in its powers of revision to the rules, restrictions and limitations contained in sections 2814 and 2804, Revised Statutes, 94 O. L., 246 and 319, and whatever other sections there may be bearing on the subject. And if it should be found that certain things are authorized to be done by the board of revision, and nó statute can be found prescribing the exact mode of performing that duty or thing, the presumption would be that the general assembly intended that it might be performed in a reasonable manner, not in conflict with •any law of the state. This principle was recognized by this court in Jewett v. Railway Co., 34 Ohio St., 601, 608, where the following is found in the opinion: “Where authority is given to do a specific thing, but the precise mode of performing it is not prescribed, the presumption is that the legislature intended the party might perform it in a reasonable manner.”
But it is not likely that resort must be had to this principle, as the statutes are probably broad enough to cover the entire scope of the powers and duties of the board of revision. As the board of revision acts upon the valuations as fixed in the year 1900, it is clear that it is not bound by the limitation as to the “aggregate value on the duplicate of the preceding year,” as found in said section 2804.
As the boards of revision will perform the same work in 1901 that would otherwise be performed in that year as to valuations of real estate by the boards *513 of equalization, the latter boards Avill, for that year only, be superseded by the boards of revision as to equalizing the valuations of real estate in the several counties and cities, upon the principle that a later statute supersedes an earlier one, when both cover the same subject matter. The same is true as to the board of supervisors of Cincinnati, section 2690m. Its duties as to equalizing the valuations of real property for the year 1901, will be performed by the board of revision.
The statute providing for boards of revision, is not only a valid act, not inconsistent with the Royer law, but it is a Avise provision, because the persons who composed the board of equalization and equalized the valuations of real estate in the year 1900, are likely to be more competent to reAÚse inequalities in those same valuations upon complaint, than another board not familiar with the subject.
If a. city board of revision should prolong its session to the fourth Monday of January, 1902, it might seriously inconvenience the completion of the tax duplicate for the year 1901, but that cannot be remedied by this court. This inconvenience can be avoided by closing the session at an earlier date, as the board is not required to remain in session the full time.
Being of opinion that the Hendley law is not in conflict with the Royer law, the demurrer to the answer must be overruled, and the petition of the relator dismissed.

Petition dismissed.